PATRICK J. LANGDON, GUARDIAN, APPELLEE, v. MARGARET
    LANGDON, DEFENDANT: UNITED STATES FIDELITY &
    GUARANTY COMPANY, APPELLANT.

FILED MAY 15, 1920.   No. 21003.

1. Guardian and Ward: ACTION ON BOND. The county court has exclusive jurisdiction to determine the state of accounts between the guardian and ward, and no action can be maintained upon a guardian's bond until the amount to be due from the guardian is first ascertained on the settlement of the guardian's final account by the county court.

2. ——: ACCOUNTING: DECREE: CONCLUSIVE ON SURETY. The order and decree of the county court as to the amount due from the guardian to his ward upon the final accounting and settlement of the guardian is final and conclusive upon the sureties upon the guardian's bond, both as to the bond entered into upon his appointment or for any bond he may have been required to give under a license to sell his ward's real estate.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. Affirmed.

Strode & Beghtol, for appellant.

Anthony E. Langdon and William R. Patrick, contra.

TIBBETS, C.

This is an action brought by Patrick J. Langdon, as guardian of William Kieran Langdon, an incompetent, to recover from the defendants, Margaret Langdon, former guardian of the person and estate of the incompetent, and her surety, the defendant United States Fidelity & Guaranty Company, the amount claimed to be due the plaintiff, William Kieran Langdon, from the defendants, upon a bond in which Margaret Langdon was principal and the United States Fidelity & Guaranty Company was surety. Trial was had to the court and judgment rendered for the plaintiff and against the defendant surety company for $5,755.35. The defendant surety company appeals.

The defendant Margaret Langdon is the mother, and was in 1905, and for some considerable period thereafter, the guardian of the person and estate of William Kieran Langdon, the plaintiff herein; that during said year of 1905, and as guardian of the plaintiff, and the then minor, she duly obtained a license from the district court for Lancaster county, Nebraska, to sell 80 acres of land in Sarpy county, Nebraska, in which her ward had an interest, and the defendant surety company became her surety upon a bond running to the judge of the district court with the usual and statutory requirements and conditions that the guardian account for the proceeds of the sale in the manner provided by law. The land was sold, and on September 7, 1906, the ward became of legal age, and on the 6th day of November, 1906, he executed and delivered to the guardian two receipts similar in form and substance—one was filed in the office of the clerk of the district court for Lancaster county, Nebraska, January 30, 1907, the other was filed in the office of the county court of Lancaster county, Nebraska, November 10, 1906—in full satisfaction of the proceeds due him from the sale of said real estate, and requested that the surety be discharged. On the 5th day of June, 1907, the ward was confined in the state hospital for the insane at Nevada, Missouri, where he remained for the greater portion of the time until April 30, 1915.

In July, 1915, he filed a petition in the county court of Lancaster county, of which the material allegations, as far as the issues in this case are concerned, were that, as guardian of his person and estate, Margaret Langdon had received large sums of money belonging to the petitioner, had never accounted for the same, and praying that a citation be issued and that she be compelled to account for all the moneys and property coming into her possession as guardian of the petitioner. Citation was accordingly issued, the parties appeared personally and by their attorneys, and upon a hearing the court found that the receipt given by the ward to the guardian should

be cancelled and held for naught, and so ordered. The court further found that there was due from the guardian from the sale of the said lands in Sarpy county, principal and interest, the sum of $6,726.13.

The instant action was brought for the recovery of that sum with interest against the guardian and her surety, United States Fidelity & Guaranty Company. No service was had upon the guardian in this action. The answer of defendant guaranty company consists practically of a statement of facts as heretofore set forth; further, that the receipt heretofore mentioned was on file in the office of the clerk of the district court in Lancaster county from the 30th day of January, 1907, and that the plaintiff is estopped by laches from the prosecution of this action; that more than five years had elapsed since the application of the guardian to dispose of the proceeds of said sale according to law accrued, and thereby the plaintiff is barred by the statute of limitations; further, that the surety company was not a party to the proceedings in the county court and therefore not bound by the decree therein rendered.

There are practically only two issues involved in this case. The first and primary issue is: Did the decree of the county court bind the surety company? . Second, was there such laches on the part of the plaintiff as would estop him in prosecuting this action? In the first contention it is self-evident that, if it was necessary, in order to bind the defendant, it should have been made a party to the proceedings for a final accounting in the county court, the plaintiff is not entitled to recover, as the evidence of the indebtedness was based entirely upon the decree rendered by that court. The rule is well settled and is almost the universal rule of every court of last resort in the United States, where the statute is similar to that of this state, that the county court must first determine the amount due from the guardian to the ward before an action can be brought on the guardian's bond.

"A right of action on a guardian's bond, to recover the amount remaining in the hands of the guardian, first accrues to the ward, when such amount is ascertained by the county court on the settlement of the guardian's final account." *Ball v. LaClair,* 17 Neb. 39. The court in the opinion say: "Upon the granting of the letters of guardianship, and approving the bond, the probate court in a sense acquired jurisdiction of the case and of the parties, and it seems to me to be not only logical, but in accordance with the weight of authority, that such jurisdiction remains exclusive for the purpose of fixing the liability of the guardian." The rule laid down in the case of *Ball v. LaClair, supra,* was adhered to and cited with approval in the case of *Bisbee v. Gleason,* 21 Neb. 534. In the last-cited case this court in the opinion cites and adopts the rule as laid down in the case of *Allen v. Tiffany,* 53 Cal. 16, in which it was held: "The probate judge has exclusive jurisdiction to determine the state of accounts between the guardian and ward. An action against the guardian for default will not lie in the district court until after an accounting and settlement in the probate court."

In the instant case the theory of the defendant seems to be that the guardian may settle with his ward after he attains his majority or pay the proceeds of any funds belonging to the ward in his hands into court, or, as in the instant case, where the funds in his hands are the proceeds of the sale of real estate in which the ward has an interest, by turning it over to the regular guardian appointed by the probate court, and the presumption is that the funds in the instant case were so turned over, and defendant insists that, where the same person acts in a dual capacity, the presumption arises that the funds were turned over in accordance with the directions of the statute; but that is not the condition in the instant case. The guardian did not act in a dual capacity, and that rule contended for by defendant does not apply in this case.

The citation of authorities therefore by the defendant guaranty company that money received by a person who acts in two representative characters will be conclusively presumed to be held in that capacity in which the lawful duty rests to eventually hold it is not applicable to the instant case, as the citations referred to by the defendant are where the party making the sale acted as the administrator of an estate and was also guardian, except the case of *Fay v. Taylor*, 52 Mass. 529. However, that case is not in accord with more recent decisions of the supreme court of Massachusetts, in which that rule has not been adhered to. The Massachusetts court at a later date modified the rule laid down in the last-cited case in the case of *Mattoon v. Cowing*, 13 Gray (Mass.) 387, and in the case of *McKim v. Morse*, 130 Mass. 439. The application of the defendant Margaret Langdon for a license to sell the real estate of her ward was made by her as guardian; the statutes of this state requiring that she give a bond to answer for the proceeds of the sale of the real estate according to law. This bond was for such additional funds as might come into her possession as such guardian by reason of the sale under the license. Her right to make the application was by virtue of her guardianship. She was under no responsibility to the district court as to her disposition of the same. Her accounting for those funds must be made to the county court. The proceedings in the district court simply operated in transferring real property into money, and, as soon as it came into her possession after the termination of the proceedings in the district court, it was the same as though it came into her possession originally upon her appointment as guardian, and the county court obtained sole and exclusive original jurisdiction over the matter. The functions of the district court had ceased. The fact that a receipt had been filed in the district court by the ward operated in no manner as a release of the guardian in the county court. It served no useful purpose whatever as far as the ac-

counting in the county court was concerned. There is some reason in the contention' of the surety company that the decree and finding in the county court should not be binding upon it in view of the fact that it was not made a party, but the general tendency of the courts is, under statutes similar to those of this state, to hold the guardian and surety responsible for the proceeds of the sale in the county court upon the final accounting of the guardian, and the surety must take notice of the proceedings in that court, although not made a party to the proceedings therein. The tenor of the cases is that the county court fixes the liability. *Newton v. Hammond*, 38 Ohio St. 430. "The order and determination of the probate court as to the amount due from the guardian to his ward, made after due notice to the guardian, is final and conclusive upon the sureties upon the guardian's bond in an action against them thereon." *Cross v. White*, 80 Minn. 413. And to the same effect, *Jacobson v. Anderson*, 72 Minn. 426; *Braiden v. Mercer*, 44 Ohio St. 339.

As to the question of laches, in this jurisdiction, this court has not looked with any great favor upon the defense of laches, and it is only in those cases where the party has been guilty of inexcusable negligence in enforcing a right that the rule has been enforced. The facts in the present case disclose there was no such laches on the part of the plaintiff as would warrant a reversal of this case. The ward, very shortly after his majority, gave the receipts offered in evidence. Within a very short period of time thereafter he was confined in the state insane asylum. Almost immediately after his release he filed his petition in the county court of Lancaster county for the purpose of obtaining a final accounting from his guardian. There is no evidence to our minds that he has in any way been guilty of laches. It would seem that the receipt was given by the ward to his guardian in 1906. Nearly 10 years had elapsed from that time until the filing of the petition in the

county court to compel the guardian for an accounting. It became the duty of the guardian within a reasonable time under the statutes of this state to make a final accounting to the county court for her acts and doings as guardian of her ward and for a final settlement of her account. The ward had attained the age of 21 years. There was no authority of law for the guardian to retain the funds in her hands for a longer period. She neglected her duty in that respect, and the amount found due from her to her ward is final and conclusive as to the sureties upon the guardian's bond.

In view of the reasons heretofore given and the authorities cited, we are of the opinion that the judgment of the district court is correct, and recommend the same be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.